IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| NICK YELDO, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> MUSCLEPHARM CORP, <br><br> Defendant. | No. <br><br><br><br> **JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiff Nick Yeldo ("Plaintiff"), individually and on behalf of himself and all others similarly situated, by his undersigned attorneys, upon personal knowledge as to himself, upon information and belief, and based upon the investigation of his Counsel as to the remaining allegations, alleges as follows:

### INTRODUCTION

1. This is a civil class action brought individually by Plaintiff and on behalf of a class of persons similarly situated, ("Class Members"), who purchased the dietary supplement MusclePharm Glutamine (the "Product") from Defendant.

2. The class members are all persons located within the state of Michigan and throughout the United States who purchased the Product.

3. Defendant advertises, manufactures, markets, sells and distributes the Product.

4. Most companies in this bodybuilding supplement industry totally ignore competent and reliable scientific data regarding their products and ingredients.

5. The Product is generally categorized as an "L-Glutamine" product.

6. L-Glutamine is a naturally-occurring, nonessential, neutral amino acid.

7. It is important as a constituent of proteins and as a means of nitrogen transport between tissues.

8. Glutamine is the most abundant free amino acid in human skeletal muscle and plasma.

9. The effects of acute exercise on plasma glutamine appear to be largely dependent on the duration and intensity of exercise.

10. Studies have shown an increase or no change in plasma glutamine levels following short-term, high-intensity exercise in humans.

11. Many healthy people are under the impression than enhanced intake of glutamine has beneficial effects, and they consume chronically glutamine 1-3 times daily.

12. This is frequently the case among athletes and bodybuilders.

13. Glutamine supplementation doses range from 2-40 grams/day, and represents 3%-60% of the recommended intake of amino nitrogen.

14. Just because a substance, such as glutamine, is a nutrient does not necessarily mean that its enhanced use is beneficial.

15. Simply because a substance, such as glutamine, is a nutrient, does not necessarily mean that its enhanced use is beneficial. Glutamine naturally found within the body does play a role in certain mechanisms supporting muscle growth, recovery and immunity support.

16. However, as noted in the numerous scientific citations contained herein, glutamine supplementation has been found to be completely ineffective at mimicking these physiological responses.

17. Simply put, the ingestion of Defendant's Product does absolutely nothing for the recovery from exercise, recovery of muscle tissue, enhancement of muscle or ability to decrease muscle wasting (anti-catabolic).

18. Despite the knowledge that the mislabeling of the Product is misleading to consumers, Defendant continues to advertise, distribute, label, manufacture, market, and sell the Product in a misleading and deceptive manner.

**PARTIES**

19. During the Class period commencing six years before the date of this filing, class members in Michigan and throughout the United States purchased the Product through numerous other brick and mortar and online retail stores. Plaintiff and class members suffered an injury in fact caused by the false, fraudulent, unfair, deceptive and misleading practices set forth in this Complaint.

20. Plaintiff Yeldo is a resident of West Bloomfield, Michigan. He purchased the Product for his own use during the four years preceding the filing of this complaint, most recently from the online retail giant Bodybuilding.com, on or about September 2015.

21. MusclePharm Corporation is a corporation licensed in the State of Nevada, with a principal place of business at 4721 Ironton St., Building A, Denver, CO 80239.

## JURISDICTION AND VENUE

22. This Court has subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1332(d) because the combined claims of the proposed class members exceed $5,000,000[1] and because Defendant is a citizen of a different state from the members of the Classes.

23. This Court has personal jurisdiction over Defendant because it regularly conducts business in this District.

24. Venue is proper in this District pursuant to: (1) 28 U.S.C. § 1391(b)(2) in that a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District; and (2) 28 U.S.C. § 1391(b)(3) in that Defendant is subject to personal jurisdiction in this District.

## FACTUAL ALLEGATIONS

25. The front of label of the Product clearly states the claims; "Enhance Muscle Growth & Recovery" and " Faster Recovery":

---

[1] Defendant's Product is sold through numerous different online and brick/mortar retailers, including the Vitamin Shoppe, GNC and Bodybuilding.com. There are likely tens of thousands of class members composing the proposed classes with tens of millions of dollars spent on the Product due to the far reaching distribution channels and high consumer demand for sport supplement products.



26. Defendant makes further claims on online retail websites such as Bodybuilding.com. These claims are false and misleading and include, "Aid in Muscle Growth", "Reduce catabolism and support an anabolic environment", and "Minimized muscle catabolism (breakdown)".[2]

27. The claims that the Product "Enhances Muscle Growth and Recovery" have been found by numerous scientific research papers to be blatantly false.

28. "Recovery" in bodybuilding is the process of the trained muscles to recuperate and grow after resistance training. This process enables the body to undergo muscle growth.

---

[2] See http://www.bodybuilding.com/store/musclepharm/glutamine.html (Last visited March 23, 2017).

29. Further, the claims that the Product causes "Muscle Growth" and reduces or decrease "catabolism" or muscle breakdown have been shown to be false as well.

30. All of the claims referred to regarding the Product have been shown to be false and misleading through scientific studies.

31. In one study, Glutamine failed to affect muscle protein kinetics of the subjects.[3]

32. Another study in healthy humans, glutamine was continuously infused for 2.5 hours at a rate corresponding to 0.4 grams/kg and revealed that glutamine provision did neither stimulate muscle protein synthesis.[4]

33. There is a study that investigated the effect of L-glutamine supplementation on the plasma and muscle tissue glutamine concentrations of exercise-trained rats immediately and three hours after a single exercise session until exhaustion. Rats were subjected to 60 minutes of swimming exercise daily for six weeks. During the final three weeks, one group was given a daily dose of L-glutamine (1 gram/kg). The plasma and muscle glutamine levels were higher than placebo during the post-exhaustive recovery period; however, this increase had no effect on exercise swim test to exhaustion performance, suggesting that elevations in plasma and muscle glutamine levels have no benefit on muscle performance.[5]

34. A study was conducted to assess the effect of oral glutamine supplementation combined with resistance training in young adults. Subjects received either placebo (0.9 grams/kg fat-free mass/day of maltodextrin) or L-glutamine (0.9 grams/kg fat-free mass/day) during six weeks of resistance training. Results showed that muscle strength and torque, fat-free mass, and urinary 3-methyl histidine (a marker of muscle protein degradation) all significantly increased with training, but were not different between groups. This study

---

[3] Gore D, Wolfe R. Glutamine supplementation fails to affect muscle protein kinetics in critically ill patients. *JPEN J Parenter Enteral Nutr*, 2002, 26:342-49.
[4] Svanberg E, Moller-Loswick A, Matthews D, Korner U, Lundholm K. The effect of glutamine on protein balance and amino acid flux across arm and leg tissues in healthy volunteers. *Clin Physiol*, 2001, 4:478-89.
[5] Rogero M, Tirapequi J Pedrose R, Castro I, Pires I. Effect of alanyl-glutamine supplementation on plasma and tissue glutamine concentrations in rats submitted to exhaustive exercise. *Nutrition*, 2006, 22:564-71.

demonstrated that L-glutamine supplementation during resistance training had no significant effect on muscle performance, body composition, or muscle protein degradation in young healthy adults.[6]

35. A study was performed to examine the effects of a combination of effervescent creatine, ribose, and glutamine on muscle strength, endurance, and body composition in resistance-trained men. Subjects performed resistance training while ingesting either placebo or the experimental supplement (5 grams of creatine, 3 grams of glutamine, and 2 grams ribose), for eight weeks. Both groups significantly improved muscle strength and endurance and fat-free mass, yet groups were not significantly different from one another. Therefore, the experimental supplement, which included glutamine, was no more effective than placebo in improving skeletal muscle adaptation to resistance training.[7]

36. Another study sought to determine the effects of eight weeks of creatine monohydrate and glutamine supplementation on body composition and performance measures. Subjects were randomly assigned to receive either placebo for eight weeks, creatine monohydrate (0.3 grams/kg/day for one week and then 0.03 grams/kg/day for seven weeks) or the same dose of creatine in addition to 4 grams of glutamine/day while engaged in a resistance training program. Body mass and fat-free mass increased in the creatine and creatine + glutamine groups at a greater rate than with placebo. Additionally, the two experimental groups underwent a significantly greater improvement in the initial rate of muscle power production compared to placebo. These results suggest that the creatine and creatine + glutamine groups

---

[6] Candow D, Chilibeck P, Burke D, Davison K, Smith-Palmer T. Effect of glutamine supplementation combined with resistance training in young adults. *Eur J Appl Physiol*, 2001, 86:142-49.
[7] Falk D, Heelan K, Thyfault J, Koch A. Effects of effervescent creatine, ribose, and glutamine supplementation on muscle strength, muscular endurance, and body composition. *J Strength Cond Res*, 2003, 17:810-16.

were equally effective in producing skeletal adaptation to resistance training and that glutamine apparently had no preferential effect in augmenting the results.[8]

37. A study was performed to determine if high-dose glutamine ingestion affected weightlifting performance. In a double-blind, placebo-controlled, crossover study resistance-trained men performed weightlifting exercises one hour after ingesting placebo (calorie-free fruit juice) or glutamine (0.3 g/kg) mixed with calorie-free fruit juice. Results demonstrated no significant differences in weightlifting performance (maximal repetitions on the bench press and leg press exercises), indicating that the short-term ingestion of glutamine did not enhance weightlifting performance in resistance-trained men.[9]

38. Similarly, a study sought to determine whether glutamine ingestion influenced acid-base balance and improved high-intensity exercise performance. Trained males performed five exercise bouts on a cycle ergometer at 100% of VO2 peak. The first four bouts were 60 seconds in duration, while the fifth bout was continued to fatigue. Each bout was separated by 60 seconds of recovery. The exercise bouts were initiated 90 minutes after ingesting either placebo or 0.3 grams/kg of glutamine. Results showed that blood pH, bicarbonate, and lactate, along with time to fatigue, were not significant different between supplement conditions indicating that the acute ingestion of L-glutamine did not enhance either buffering potential or high-intensity exercise performance in trained males.[10]

---

[8] Lehmkuhl M, Malone M, Justice B, Trone G, Pistilli E, Vinci D, Haff E, Kilgore L, Haff G. The effects of 8 weeks of creatine monohydrate and glutamine supplementation on body composition and performance measures. *J Strength Cond Res*, 2003, 17:425-38.
[9] Antonio J, Sanders M, Kalman D, Woodgate D, Street C. The effects of high-dose glutamine ingestion on weightlifting performance. *J Strength Cond Res*, 2002, 16:157-60.
[10] Haub M, Potteiger J, Nau K, Webster M, Zebas C. Acute L-glutamine ingestion does not improve maximal effort exercise. *J Sports Med Phys Fitness*, 1998, 38:240-44.

39. Another study determined whether oral glutamine, alone or in combination with hyperoxia, influenced oxidative metabolism and cycle time-trial performance in men. Subjects ingested either placebo or 0.125 grams/kg of glutamine one hour before completing a brief high-intensity time-trial (approximately four minutes in duration). Results indicated no significant difference in pulmonary oxygen uptake during the exercise test, thereby indicating no effect of glutamine ingestion either alone or in combination with hyperoxia, and thus no limiting effect of the tricarboxylic acid intermediate pool size, on oxidative metabolism and performance during exercise.[11]

40. Plaintiff and Class Members were in fact misled by Defendant's representations regarding the efficacy of the Product.

41. The difference between the Product promised and the Product sold is significant. The lack of benefits provided to consumers by the Product fully diminishes the actual value of the Product.

42. The FDA promulgated regulations for compliance with the FDCA and DSHEA at 21 C.F.R. 101, *et seq*. The fabricated food Product is misbranded under 21 C.F.R. 101, *et seq*.

43. Defendant's deceptive statements violate 21 U.S.C. § 343(a)(1), which deems food misbranded when the label contains a statement that is "false or misleading in any particular".

44. Similarly to the FDCA, Michigan prohibits the misbranding of food through the Food Law Act 92 of 2000 § 289.1101, *et seq*. (the "Act"). The Act provides that food is misbranded "if its labeling is false or misleading in any particular." *Id*.

---

[11] Marwood S, Botwell J. No effect of glutamine supplementation and hyperoxia on oxidative metabolism and performance during high-intensity exercise. *J Sports Sci*, 2008, 26:1081-90.

45. The Act explicitly incorporates by reference "[a]ll food labeling regulations and any amendments to those regulations adopted pursuant to the FDCA". *Id*.

46. Further, as explained above, Defendant's claims are misleading to consumers in violation of 21 U.S.C. § 343, which states, "A food shall be deemed to be misbranded—False or misleading label [i]f its labeling is false or misleading in any particular."

47. The introduction of misbranded food into interstate commerce is prohibited under the FDCA and all state parallel statutes cited in this Complaint.

48. Plaintiff and Class Members would not have purchased the Product, or would have not paid as much for the Product had they known the truth about the mislabeled and falsely advertised Product.

## V. CLASS ACTION ALLEGATIONS

49. Plaintiff brings this action individually and as representatives of all those similarly situated pursuant to Rule 23 F.R.C.P. on behalf of the below-defined Classes:

> **National Class:** All persons in the United States that purchased the Product at any time during the six years before the date of filing of this Complaint to the present.
>
> **Michigan Subclass:** All persons in the State of Michigan that purchased the Product at any time during the six years before the date of filing of this Complaint to the present.

Excluded from the Classes are Defendant and its affiliates, parents, subsidiaries, employees, officers, agents, and directors. Also excluded are any judicial officers presiding over this matter and the members of their immediate families and judicial staff.

50. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

51. **Numerosity – Federal Rule of Civil Procedure 23(a)(1).** The members of the Classes are so numerous that their individual joinder herein is impracticable. On information and belief, Class members number in the thousands to millions. The precise number of Class members and their addresses are presently unknown to Plaintiff, but may be ascertained from Defendant's books and records. Class members may be notified of the pendency of this action by mail, email, Internet postings, and/or publication.

52. **Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).** Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members. Such common questions of law or fact include:

   a. Whether the marketing, advertising, packaging, labeling, and other promotional materials for the Product is deceptive;

   b. Whether Defendant was Unjustly Enriched at the expense of the Plaintiff and Class Members;

   c. Whether Defendant violated an Express Warranty to Plaintiff and Class Members.

   d. Whether Defendant committed fraud based on the false and misleading nature of the claims regarding the Product.

53. Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff, on behalf of himself and the other Class members. Similar or identical statutory and common law violations, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action.

54. **Typicality – Federal Rule of Civil Procedure 23(a)(3).** Plaintiff's claims are typical of the claims of the other members of the Classes because, among other things, all Class members were comparably injured through Defendant's uniform misconduct described above. Further, there are no defenses available to Defendant that are unique to Plaintiff.

55. **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).** Plaintiff is an adequate Class representatives because their interests do not conflict with the interests of the other Class members they seek to represent, they have retained counsel competent and experienced in complex class action litigation, and they will prosecute this action vigorously. The Classes' interests will be fairly and adequately protected by Plaintiff and their counsel.

56. **Insufficiency of Separate Actions – Federal Rule of Civil Procedure 23(b)(1).** Absent a representative class action, members of the Classes would continue to suffer the harm described herein, for which they would have no remedy. Even if separate actions could be brought by individual consumers, the resulting multiplicity of lawsuits would cause undue hardship and expense for both the Court and the litigants, as well as create a risk of inconsistent rulings and adjudications that might be dispositive of the interests of similarly situated purchasers, substantially impeding their ability to protect their interests, while establishing incompatible standards of conduct for Defendant. The proposed Classes thus satisfy the requirements of Fed. R. Civ. P. 23(b)(1).

57. **Declaratory and Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2).** Defendant has acted or refused to act on grounds generally applicable to Plaintiff and the other members of the Classes, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the members of the Classes as a whole.

58. **Superiority – Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other members of the Classes are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for Class members to individually seek redress for Defendant's wrongful conduct. Even if Class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## VI. CLAIMS ALLEGED

### COUNT I

**Breach Of Express Warranties**
**(On Behalf Of The National Class and Michigan Subclass)**

59. Plaintiff incorporates paragraphs 1 through 48 as if fully set forth herein.

60. Plaintiff brings this claim against Defendant on behalf of himself and the Class of all Michigan and United States purchasers of Defendant's Product.

61. Plaintiff, and each member of the Class, formed a contract with Defendant when Plaintiff and the other members of the Class purchased the Product. The terms of the contract included the promises and affirmations of fact made by Defendant on the Product's packaging and through marketing and advertising, as described above. This labeling, marketing and advertising constitute express warranties and became part of the basis of the bargain, and are

part of the standardized contract between Plaintiff and the members of the Class and Defendant.

62. Plaintiff and the members of the Class performed all conditions precedent to Defendant's liability under this contract when they purchased the Product.

63. Defendant breached express warranties about the Product and their qualities because Defendant's statements about the Product was false and the Product do not conform to Defendant's affirmations and promises described above.

64. Defendant had actual knowledge that its Product does not have characteristics and benefits that they advertise and that the Product do not conform to Defendant's affirmations and promises described above.

65. Plaintiff and the members of the Class would not have purchased or used the Product had they known the true nature of the Product.

66. As a result of Defendant's breach of express warranties, Plaintiff and each member of the Class has been damaged in the amount of the purchase price of the Product and any consequential damages resulting from their purchases, including sales tax.

67. On October 13, 2015, Plaintiff sent Defendant a pre-suit demand letter, prior to filing this Complaint, requesting the relief sought in this Complaint and notifying Defendant of the alleged breach of express warranty related to Defendant's marketing and labeling of its Product.

## COUNT II

**Breach Of Implied Warranties**
**(On Behalf of the Implied Warranty Multi-State Class and Michigan Subclass)[12]**

68. Plaintiff incorporates paragraphs 1 through 48 as if fully set forth herein.

69. Plaintiff brings this claim against Defendant on behalf of himself and the Class of all Michigan and Multi-State Class purchasers of Defendant's Product.

70. Defendant knew and intended that the members of the Classes would be the ultimate consumers of the Product.

71. Defendant sold the Product into the stream of commerce, and Defendant is a merchant with respect to goods such as the Product at issue.

72. The Product was not merchantable at the time of sale, because they did not—nor could not—have any impact related to the representations as alleged herein.

73. Plaintiff and the other members of the Classes did not receive the benefit of their bargain in purchasing the Product.

74. Defendant markets this Product in a systematically misleading manner, stating that its product has characteristics and benefits that they do not. As such, Defendant's Product is unfit for these ordinary intended purposes.

75. Plaintiff and the other members of the Classes were injured by purchasing a Product that does not have characteristics and benefits that Defendant touts. But for Defendant's misrepresentations and deception, Plaintiff and members of the Classes would not have purchased Defendant's Product.

---

[12] The States in the implied warranty multi-state class is inclusive of all states with similar implied warranty laws under the facts of this case, excluding only the States of South Carolina and Louisiana, but also including the District of Columbia.

76. Defendant had actual knowledge that its Product does not have characteristics and benefits that they advertise and that the Product do not conform to Defendant's affirmations and promises described above.

77. As a result of Defendant's breach of warranty, Plaintiff and each member of the Classes have been damaged in an amount equal to the purchase price of the Product plus applicable sales taxes.

78. On October 13, 2015, Plaintiff sent Defendant a pre-suit demand letter, prior to filing this Complaint, requesting the relief sought in this Complaint and notifying Defendant of the alleged breach of the implied warranty of merchantability for Defendant's Product.

### COUNT III

**Negligent Misrepresentation**
**(On Behalf Of The National Class and Michigan Subclass)**

79. Plaintiff incorporates paragraphs 1 through 48 as if fully set forth herein.

80. Plaintiff brings this claim against Defendant on behalf of himself and the proposed Classes.

81. Defendant has made material misrepresentations of fact concerning the nature of, and ingredients in, the Products.

82. Defendant has and had no reasonable basis for believing that their misrepresentations were true.

83. Defendant knew, or should have known, that Plaintiff and the members of the Class would rely on the false representations about the nature of, and ingredients in, the Product.

84. Defendant's false representations about the ingredients of the Product are objectively material to reasonable consumers, and therefore reliance upon such representations

may be presumed as a matter of law.

85. Plaintiff and members of the Classes reasonably relied to their detriment on Defendant's false representations, which caused them to purchase the Product.

86. As a proximate result of Defendant's negligent misrepresentations, Plaintiff and each member of the Class has been damaged in the amount of the purchase price of the Product and any consequential damages resulting from their purchases, including sales tax.

## COUNT IV

**Intentional Misrepresentation**
**(On Behalf Of The National Class and Michigan Subclass)**

87. Plaintiff incorporates paragraphs 1 through 48 as if fully set forth herein.

88. Defendant has intentionally made material misrepresentations of fact concerning the nature of, and ingredients in, the Product.

89. Defendant knew that the intentional misrepresentations herein were false at the time they were made.

90. Defendant intended that Plaintiff and members of the Class would rely on the false representations and purchase Defendant's Product.

91. Defendant's false representations are objectively material to reasonable consumers and therefore reliance upon such representations may be presumed as a matter of law.

92. Plaintiff and members of the Classes reasonably relied to their detriment on Defendant's intentional misrepresentations.

93. Defendant's intentional misrepresentations were a substantial factor in causing Plaintiff and members of the Classes to purchase the Product.

94. Defendant has acted with malice by engaging in conduct that was and is intended to cause injury to Plaintiff and the members of the Classes.

95. Defendant has committed fraud through its intentional misrepresentations, deceit, and/or concealment of material facts known to Defendant with the intent to cause injury to the purchasers of the Product.

96. As a proximate result of Defendant's intentional misrepresentations, Plaintiff and the members of the Classes suffered an ascertainable loss and are entitled to relief and compensatory and punitive damages, in an amount to be determined at trial.

## COUNT V

**Unjust Enrichment**
**(On Behalf Of The National Class and Michigan Subclass)**

97. Plaintiff incorporates paragraphs 1 through 48 as if fully set forth herein.

98. Plaintiff and the other members of the Classes conferred benefits on Defendant by purchasing the Product.

99. Defendant has been unjustly enriched by its retention of the revenues derived from the purchases of the Product by Plaintiff and the other members of the Classes. Retention of those monies under these circumstances is unjust and inequitable because Defendant's labeling of the Product was misleading to consumers, which caused injuries to Plaintiff and the other members of the Class because they would not have purchased the Product if the true facts would have been known.

100. Because Defendant's retention of the non-gratuitous benefits conferred on them by Plaintiff and the other members of the Classes is unjust and inequitable, Defendant must pay restitution to Plaintiff and the members of the Classes for its unjust enrichment, as ordered by the Court.

## VII. DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury of all claims in this complaint so triable.

## VIII. REQUEST FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the other members of the Classes proposed in this Complaint, respectfully request that the Court enter judgment as follows:

- A. Declaring that this action is a proper class action, certifying the Class as requested herein, designating Plaintiff as Class Representative and appointing the undersigned counsel as Class Counsel for the Classes;

- B. Ordering Defendant to pay actual damages to Plaintiff and the other members of the Classes;

- C. Ordering Defendant to pay punitive damages, as allowable by law, to Plaintiff and the other members of the Classes;

- D. Ordering Defendant to pay attorneys' fees and litigation costs to Plaintiff and the other members of the Classes;

- E. Ordering Defendant to pay both pre- and post-judgment interest on any amounts awarded;

- F. Leave to amend this Complaint to conform to the evidence presented at trial; and

- G. Ordering such other and further relief as may be just and proper.

Dated: March 30, 2017            Respectfully submitted,

By: */s/ Nick Suciu III*

Nick Suciu III (P72052)
BARBAT, MANSOUR & SUCIU PLLC
1644 Bracken Rd.
Bloomfield Hills, Michigan 48302
(313) 303-3472
nicksuciu@bmslawyers.com

Jordan L Chaikin
CHAIKIN LAW FIRM PLLC
12800 University Drive, Suite 600
Fort Myers, Florida 33907
Tel:239.470.8338
jordan@chaikinlawfirm.com

Attorneys for Plaintiff and the putative class