UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NICK YELDO,

        Plaintiff,

                                 Case No.  17-11011

vs.                              HON.  GEORGE CARAM STEEH

MUSCLEPHARM CORP.,

        Defendant.
_____/

ORDER GRANTING DEFENDANT'S REQUEST FOR JUDICIAL
NOTICE (DOC. 13) AND GRANTING IN PART AND DENYING
IN PART DEFENDANT'S MOTION TO DISMISS (DOC. 12)

Plaintiff Nick Yeldo, individually and on behalf of all others similarly situated, alleges that defendant MusclePharm Corp. utilizes misleading marketing practices to promote its Glutamine product. This matter is presently before the Court on defendant's request for judicial notice, (Doc. 13) and motion to dismiss, (Doc. 12). Oral argument was held on November 14, 2017. For the reasons stated below, defendant's motion is GRANTED IN PART AND DENIED IN PART.

**I. Background**

Defendant manufactures and sells dietary supplements and sports nutrition products. (Doc. 9 at PageID 174). Plaintiff purchased and

consumed the dietary supplement MusclePharm Glutamine (the Product) marketed and sold by defendant throughout the four years preceding the filing of his complaint. (Doc. 9 at PageID 176). The Product's label and online advertisements indicate that it enhances muscle growth and recovery, supports rebuilding and recovery from the toughest workouts, reduces catabolism and supports an anabolic environment, aids in muscle growth, causes faster recovery, and helps consumers rehydrate, rebuild, and recover faster and more efficiently. (Doc. 9 at PageID 175).

Glutamine[1] is a "naturally occurring, nonessential, neutral amino acid." (Doc. 9 at PageID 176). "It is important as a constituent of proteins and as a means of nitrogen transport between tissues." (Doc. 9 at PageID 177). Plaintiff alleges that many healthy people, including athletes and body builders, are under the impression that increased intake of glutamine has beneficial effects. (*Id.*). He concedes that Glutamine naturally found within the body plays a role in muscle growth, recovery, and immunity support, but alleges that "glutamine supplementation has been found to be completely ineffective at mimicking these physiological responses." (*Id.*). In short, plaintiff alleges that "the ingestion of defendant's Product does absolutely nothing for the recovery from exercise, recovery of muscle

---

[1] Glutamine is also referred to as L-Glutamine.

tissue, enhancement of muscle or ability to decrease muscle wasting."
(Doc. 9 at PageID 178).

Plaintiff bases his claims regarding the ineffectiveness of glutamine supplements on nine scientific studies. The first study showed that "glutamine failed to affect muscle protein kinetics of the test subjects." (Doc. 9 at PageID 179, n. 2). In a second study, "glutamine was continuously infused" in "healthy humans" "for 2.5 hours at a rate corresponding to .4 grams/kg" and "revealed that glutamine provision did [not] stimulate muscle protein synthesis." (Doc. 9 at PageID 179, n. 3).

In a third study, researchers investigated the effect of glutamine supplementation on the plasma and muscle tissue glutamine concentrations of exercise-trained rates immediately and three hours after a single exercise session until exhaustion. (Doc. 9 at PageID 180, n. 4). During the final three weeks of the six-week study, one group of rats received a daily dose of glutamine. (*Id.*). While "[t]he plasma and muscle glutamine levels were higher than placebo during the post-exhaustive recovery period," the "increase had no effect on the exercise swim test to exhaustion performance, suggesting that elevations in plasma and muscle glutamine levels have no benefit on muscle performance." (*Id.*).

A fourth study investigated "the effect of oral glutamine supplementation combined with resistance training in young adults." (Doc. 9 at PageID 180, n. 5). Subjects received either a placebo or glutamine during six weeks of resistance training. (*Id.*). "Results showed that muscle strength and torque, fat free mass, and urinary 3-methyl histidine (a marker of muscle protein degradation) all significantly increased with training, but were not different between the groups," suggesting "that L-glutamine supplementation during resistance training had no significant effect of muscle performance, body composition, or muscle protein degradation" in healthy young adults. (*Id.*).

A fifth study examined "the effects of a combination of effervescent creatine, ribose, and glutamine on muscle strength, endurance, and body composition in resistance-trained men." (Doc. 9 at PageID 180-81 n. 6). Subjects performed resistance training for eight weeks and received either a placebo or an experimental supplement containing creatine, glutamine, and ribose. (*Id.*).Both subject groups improved muscle strength, endurance, and fat-free mass. But the groups were not significantly different from one another, suggesting that the "supplement, which included glutamine was no more effective than [a] placebo in improving skeletal muscle adaptation to resistance training." (*Id.*).

A sixth study investigated the effects of creatine monohydrate and glutamine supplementation on body composition and performance measures. (Doc. 9 at PageID 181, n. 7.). Subjects engaged in an eight-week resistance training program and received either a placebo, creatine monohydrate (.3 grams/kg/day for one week and then .03 grams/kg/day for seven weeks), or the same dose of creatine in addition to 4 grams of glutamine per day. (*Id.*). The creatine and the creatine + glutamine groups experienced body mass and fat-free mass increases at a greater rate than the placebo group as well as a greater improvement in the initial rate of muscle power production. (*Id.*). Plaintiff claims that "[t]hese results suggest that the creatine and creatine + glutamine groups were equally effective in producing skeletal adaption to resistance training and that glutamine apparently had no preferential effect in augmenting the results." (*Id.*).

A seventh study examined if high-dose glutamine ingestion affected weightlifting performance. (Doc. 9 at PageID 181-82, n. 8). In "a double-blind, placebo-controlled, crossover study, resistance-trained men performed weightlifting exercise one hour after ingesting placebo . . . or glutamine (.3 g/kg)." (*Id.*). According to Plaintiffs, "[r]esults demonstrated no significant differences in weightlifting performance (maximal repetitions on the bench press and leg press exercises), indicating that the short-term

ingestion of glutamine did not enhance weightlifting performance in resistance-trained men." (*Id.*).

An eighth study investigated "whether glutamine ingestion influenced acid-base balance and improved high-intensity exercise performance." (Doc. 9 at PageID 182, n. 9). The "[r]esults showed that blood pH, bicarbonate, and lactate, along with time to fatigue, were not significant[ly] different between supplement conditions, indicating that the acute ingestion of L-Glutamine did not enhance either buffering potential or high-intensity exercise performance in trained males." (*Id.*).

Finally, in the ninth study, researchers examined "whether oral glutamine, alone or in combination with hyperoxia, influenced oxidative metabolism and cycle time-trial performance in men." (Doc. 9 at PageID 182, n. 10). Subjects received either a placebo or a glutamine supplement one hour before completing a brief high-intensity time-trial. (*Id.*). The "[r]esults indicated no significant difference in pulmonary oxygen uptake during the exercise test, thereby indicating no effect of glutamine ingestion either alone or in combination with hyperoxia." (*Id.*).

Plaintiff claims that defendant's Product label and advertising are false and misleading, that he was in fact mislead by defendant's representations regarding the Product's efficacy, and that he would not

have purchased the Product, or would not have paid as much for it, had he known the truth about the misrepresentations.

Plaintiff seeks certification of two classes:

- **National Class**: All persons in the United States who purchased the Product within the six years preceding the Complaint.
- **Michigan Subclass**: All persons in the State of Michigan who purchased the Product within the six years preceding the Complaint.

Plaintiff alleges breach of express warranty (Count I), negligent misrepresentation (Count III), fraud by uniform written misrepresentation and omission / fraudulent inducement (Count IV), and Unjust Enrichment (Count V) on behalf of the National Class, or alternatively, the Michigan Subclass. He alleges breach of implied warranties of merchantability and fitness (Count II) on behalf of the Implied Warranty Multi-State Class and Michigan Subclass. He also seeks injunctive relief (Count VI) on behalf of the National Class.

## II. Legal Standard

### A. Fed. R. Civ. P. 12(b)(6)

A court confronted with a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) must construe the complaint in favor of the plaintiff, accept the allegations of the complaint as true, and determine whether the plaintiff's factual allegations present plausible claims. *Bell*

*Atlantic Corp. v. Twombly*, 550 U.S. 544, 554-56 (2007). "[N]aked assertions devoid of further factual enhancement" and "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" are insufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint need not contain "detailed" factual allegations, but its "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true." *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007).

**B. Fed. R. Civ. P. 9(b)**

For a claim involving fraud, it is not sufficient for a plaintiff to plead general facts that render the claim plausible. Rather, "a party must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). This means that a plaintiff must "allege the time, place, and content of the alleged misrepresentations [or omissions] on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 877 (6th Cir. 2006) (quoting *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 563 (6th Cir. 2003)) (internal quotation marks omitted); *see also*

*Republic Bank & Trust Co. v. Bear Stearns & Co. Inc.*, 683 F.3d 239, 255-56 (6th Cir. 2012).

## III. Analysis

### A. Consideration of Documents Not Attached to the Amended Complaint

In its Request for Judicial Notice, (Doc. 13), defendant asks the Court to consider nine documents while evaluating its Motion to Dismiss; an order filed in the United States District Court for the Southern District of California, (Doc. 13-2) an image of the Product's complete label, (Doc. 13-3), and seven scientific studies cited in the Amended Complaint, (Doc. 13-4, 13-5, 13-6, 13-7, 13-8, 13-9, 13-10). Defendant cites to Fed. R. Evid. 201(b) as well as case law on the incorporation by reference doctrine. Plaintiff did not file an opposition to this request.

Pursuant to Federal Rule of Evidence 201, "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questions." Fed. R. Evid. 201(b)(2). "Courts addressing motions to dismiss product-labeling claims routinely take judicial notice of images of the product packaging." *Sandoval v. PharmaCare US, Inc.*, 145 F. Supp. 3d 986, 992 (S.D. Cal. 2015). Courts may also "take judicial notice of public record, including judicial opinions. *Murray v. Elations Co.*, No. 13-

CV-02357-BAS WVG, 2014 WL 3849911, at *4 (S.D. Cal. Aug. 4, 2014) (citing *Lee v. City of Los Angeles,* 250 F.3d 668, 690 (9th Cir.2001)). The Court shall, therefore, take judicial notice of the September 26, 2016 Order in *Dabish v. MusclePharm Corp.*, No. 3:15-CV-02848-CAB-RBB (S. D. Cal.), (Doc. 13-2), and the Product label, (Doc. 13-3).

"[A]s a general rule, matters outside the pleadings may not be considered in ruling on a 12(b)(6) motion to dismiss unless the motion is converted to one for summary judgment under Fed. R. Civ. P. 56." *Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir. 1999) (quoting *Weiner v. Klais & Co.*, 108 F.3d 86, 88 (6th Cir. 1997)) (abrogated on other grounds by *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)). However, "when a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment." *Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 335–36 (6th Cir. 2007). The nine scientific studies referenced in the Amended Complaint are integral to plaintiff's claims. The Court shall consider all nine of these documents, not simply the seven attached to defendant's motion.[2]

---

[2] The Amended Complaint cites nine studies in footnotes 2-10. Defendant's request includes the studies referenced in footnotes 2-8.

## B. Plaintiff has Alleged a Plausibly False Statement

The Amended Complaint cites nine studies to support plaintiff's allegation that the Product's representations are false and misleading. Defendant argues that these studies fail to support plaintiff's claims because there is no match between the studies and the Product and its representations.

Defendant asserts that plaintiff must plead the existence of a study that tests the combination of ingredients used in a given product. This premise is correct as it pertains to the active ingredients within a product. *See e.g., Otto v. Abbott Labs., Inc.*, No. CV 12-1411-SVW(DTB), 2013 WL 12132064 (C.D. Cal. Mar. 15, 2013); *Padilla v. Costco Wholesale Corp.*, No. 11 C 7686, 2013 WL 195769 (N.D. Ill. Jan. 16, 2013); *Eckler v. Wal-Mart Stores, Inc.*, No. 12-CV-727-LAB-MDD, 2012 WL 5382218 (S.D. Cal. Nov. 1, 2012). For example, in *Padilla*, the plaintiff relied on scientific studies to illustrate misleading representations of a product containing Glucosamine and MSM. 2013 WL 195769, at *1. But none of the studies assessed the effectiveness of the combination of "Glucosamine *and* MSM." *Id.* at *3 (emphasis in original). The court dismissed the plaintiff's case because the studies did not illustrate that the combination of the product's active ingredients failed to comport with the defendant's representations.

*Id.* at \*4. In *Otto*, a motion to dismiss was granted where the plaintiff relied on scientific studies addressing the effects of only one of the product's active ingredients. 2013 WL 12132064, at \*4. The court stated that "the fact that [one ingredient] alone might not affect healthy individuals [as represented] does not logically imply that the Product's specific combination of ingredients is similarly ineffectual." *Id.* In *Eckler*, the challenged product contained several active ingredients. 2012 WL 5382218, at \*6. The court clarified that, rather than studies independently addressing each active ingredient, the representations concerned the product's "overall formulation." *Id.* The plaintiff did not refer to a study that tested this formulation. *Id.* The court, therefore, recognized that the cited studies did not support the plaintiff's alleged misrepresentation and left no facts from which to infer that the defendant was liable for false advertising. *Id. See also Murray*, 2014 WL 3849911, at \*8 (granting the motion to dismiss because "[n]one of the studies cited in the Complaint test [the product] or the same combination of ingredients found in [the product], and therefore do not bear on the truthfulness of the presentations as to [the product].").

Defendant also relies on *Dabish v. MusclePharm Corp.*, No. 3:15-CV-02848-CAB-RBB (S. D. Cal. Sept. 26, 2016). (Doc. 13-2). There, the First

Amended Complaint failed to state a claim because it did not allege studies demonstrating that the Product representations were false. (Doc. 13-2 at PageID 268). The alleged misrepresentations were grouped in categories. (*Id.*). First, the plaintiff attempted to illustrate misrepresentations regarding the benefits of Creatine Nitrate. Doc. 13-2 at PageID 269). The plaintiff claimed that it was not known whether the substance conferred any health benefits and relied on studies assessing the substance's safety, not its efficacy. (*Id.*). The cited studies regarding efficacy tested a different substance – Creatine Monohydrate. (*Id.*). The court dismissed the plaintiff's claims because none the studies demonstrated falsity of statements regarding Creatine Nitrate's efficacy. (Doc. 13-2 at PageID 269-70). Second, the plaintiff challenged representations regarding "a loading phase." (Doc. 13-2 at PageID 270-71). The plaintiff cited studies suggesting one of the product's ingredients did not offer the advertised benefit. (*Id.*). The court dismissed this claim because the challenged products contained numerous ingredients and none of the studies tested these formulations. (Doc. 13-2 at PageID 271). Finally, the plaintiff alleged misrepresentations regarding the benefits of Arginine Nitrate. (*Id.*). The plaintiff again relied on a study that assessed only one of the products' ingredients. (*Id.*). The court dismissed the claims because that study did not support allegations that

representations regarding the combination of ingredients in the products were false. (*Id.*).

These cases are distinguishable because the Product at issue here does not rely on a combination of active ingredients, but rather, only one; Glutamine. This case, therefore, is more similar to *Wagner v. Gen. Nutrition Corp.*, No. 16-CV-10961, 2017 WL 3070772 (N.D. Ill. July 19, 2017).

In *Wagner*, the plaintiff purchased a "Pro Performance L-Glutamine Powder 5000 dietary supplement." *Id.* at *1. The plaintiff claimed that the defendant's labeling of the products was misleading, he was in fact misled by representations regarding the products' efficacy, and he would not have purchased the products had he known they did not provide the advertised benefits because ingestion of the product "does absolutely nothing for the recovery from exercise, recovery of muscle tissue or ability to decrease muscle wasting." *Id.* at *1, 3. The plaintiff supported his claims by citing the same nine scientific studies referenced in the Amended Complaint in the present case. *Id.* at *2. The court reviewed these studies and determined that they "support the proposition that glutamine supplementation has no effect on muscle performance or strength, muscle growth, recovery, or performance during exercise." *Id.* at *7. "Taking the allegations in the [complaint] as true," the court found that the plaintiff had "adequately

alleged that glutamine supplements do not improve recovery, muscle function, or muscle wasting" and therefore "adequately alleged that the Products' labels contain false information." *Id.* The court further rejected the defendant's argument that the plaintiff could not rely on the studies "because they do not invoke the Products, their specific dosages, and their methods of ingestion." *Id.* The court reasoned that the plaintiff's "allegations boil down to a claim that glutamine in supplement form does not have the benefits listed on the Products' labels" and, as alleged, "the studies support this claim." *Id.* Finally, the court distinguished *Padilla* and *Eckler*, noting that "the studies at issue concern the only active ingredient in the Products (at least according to Plaintiff's allegations) and they implicate glutamine's efficacy with respect to the claims on the Products' labels. *Id.*

As in *Wagner*, the Court finds that the studies cited in the Amended Complaint support plaintiff's allegation that glutamine supplements do not have the benefits claimed on the Product's labels and advertisements. The studies assess the efficacy of glutamine. The Amended Complaint pleads that the Product contains glutamine. It does not indicate that the Product contains any additional active ingredients. It further pleads that glutamine does not improve the efficacy of muscle growth, recovery, rebuilding, or

function. Viewing the allegations in the light most favorable to plaintiff, his allegations are sufficient.

Defendant argues that *Wagner* is distinguishable because, unlike the defendant in *Wagner*, here it contends that some of the studies support the Product's representations. Defendant argues that this distinction makes this case more similar to *In re GNC Corp.*, 789 F.3d 505 (4th Cir. 2015). In *GNC Corp.*, the plaintiff relied on studies to argue misrepresentations, but the complaint did not allege a scientific consensus. *Id.* at 515. Instead, the plaintiff conceded that although most experts thought that the challenged ingredients are ineffective, some reasonable experts disagreed and thought they could provide the relief the defendant promised. *Id.* The court reasoned that the complaint alleged scientific evidence regarding the efficacy of these ingredients and therefore failed to allege that the challenged representations are literally false. *Id.*

But, unlike *GNC Corp.*, plaintiff's Amended Complaint does not concede that any scientists find glutamine effective. Moreover, defendant's argument that the studies support the product representations fails. Defendant cherry-picks sentences from the papers' introduction sections, which summarize the findings of other studies or hypothesize conditions where supplemental glutamine *may* create the represented effects. (Doc.

12 at PageID 224). The conclusions, however, support plaintiff's argument. Plaintiff has, therefore, stated a claim upon which relief may be granted. It is not clear whether defendant asks the Court to weigh the merits of these scientific findings to determine which is most credible. The Court declines any such request as it is premature in a motion to dismiss. *Cf. Eckler*, 2012 WL 5382218 at *6 (assessing studies cited in a complaint when evaluating a motion to dismiss, not to weigh the merits of those studies, but rather to ensure that they support a plaintiff's claims such that there are facts from which to infer that a defendant is liable for false advertising.).

The Court also rejects defendant's argument that plaintiff's claims fail because he did not plead his experience using the Product in more detail. Plaintiff does not need to more specifically allege how and when he consumed the Product or whether he experienced the advertised benefits. He alleged that he purchased and consumed the Product, (Doc. 9 at PageID 176), and either would not have done so or would not have paid as much for the Product if he knew defendant's representations were false. This monetary harm is sufficient. *See Padilla*, 2012 WL 195769, at *3.

Finally, defendant asserts that plaintiff's claims for breach of express and implied contract, Counts I and II, fail because plaintiff has not pleaded

facts showing the Product's label and advertising were false. For the

reasons stated above, this argument fails.

## C. Count III is Barred by the Economic Loss Doctrine

Defendant argues that plaintiff's negligent misrepresentation claim is

barred by the economic loss doctrine. The economic loss doctrine is

judicially created and derived from the Uniform Commercial Code. *Quest*

*Diagnostics, Inc. v. MCI WorldCom, Inc.*, 656 N.W.2d 858, 861 (Mich. Ct.

App. 2002). It "bars all tort remedies where the suit is between an

aggrieved buyer and a nonperformance seller, the injury consists of

damage to the goods themselves, and the only losses alleged are

economic." *Sullivan Indus., Inc. v. Double Seal Glass Co., Inc.*, 480 N.W.2d

623, 627 (Mich. Ct. App. 1991); *Neilbarger v. Universal Cooperatives, Inc.*,

486 N.W.2d 612, 615 (Mich. 1992).

Plaintiff argues that his claim fits into an exception to the economic

loss doctrine. In *Huron Tool & Eng'g Co. v. Precision Consulting Servs.,*

*Inc.*, 532 N.W.2d 541 (1995), the Michigan Court of Appeals ruled that

*Neilbarger* addressed the doctrine's application to nonintentional torts. *Id.*

at 543. The court recognized an exception for the intentional tort of fraud in

the inducement. *Id.* at 545. But the court clarified that a plaintiff may only

pursue a claim for fraud in the inducement extraneous to the alleged

breach of contract," while "misrepresentations relat[ing] to the breaching party's performance of the contract [ ] do not give rise to an independent cause of action in tort." *Id.* at 545-56. The plaintiff in *Huron* sued a consulting service for breach of contract, breach of warranty, fraud, and misrepresentation, alleging that it supplied defective software. *Id.* at 543. The parties' sales contract provided that the defendant would provide the software "system's design, programming, training, and installation services." *Id.* The court found that, although plaintiff alleged fraud in the inducement, the doctrine's exception did not apply. The court reasoned that the "fraudulent representations alleged by plaintiff concern the quality and the characteristics of the software system sold by defendants." *Id.* at 546. The court found that "[t]hese representations are indistinguishable from the terms of the contract and the warranty that plaintiff alleges were breached." *Id.* As such, the plaintiff's allegations "are not extraneous to the contractual dispute" and the plaintiff "is restricted to its contractual remedies under the UCC." *Id.*

Plaintiff's claim is based on the character of the Product. He alleges that defendant represented that it would provide a product with certain benefits, but the Product plaintiff purchased could not provide these benefits. The essence of plaintiff's claim is that the Product lacked the

character for which plaintiff bargained. As such, Count III is not extraneous to the contractual dispute, but interwoven with the breach of contract and, therefore, barred by the economic loss doctrine and will be dismissed. *See e.g., TIBCO Software, Inc. v. Gordon Food Serv., Inc.*, No. 1:03-CV-25, 2003 WL 21683850, at *5 (W.D. Mich. July 3, 2003).

## D. Plaintiff Has Stated a Claim for Unjust Enrichment

Defendant argues that plaintiff's unjust enrichment claim, Count V, fails for two reasons. First, defendant asserts that this claim is predicated on the same allegations of false advertising, and therefore, fails along with the warranty and fraud claims. For the reasons state above, plaintiff has stated warranty and fraud claims upon which relief can be granted. As such, this argument does not defeat plaintiff's unjust enrichment claim.

Second, defendant argues that plaintiff's claim fails because he does not specify why he did not receive the Product's advertised benefits. "The elements of a claim for unjust enrichment are (1) receipt of a benefit by the defendant from the plaintiff, and (2) an inequity resulting to plaintiff from defendant's retention of the benefit." *Bellevue Ventures, Inc. v. Morang-Kelly Inv., Inc.*, 836 N.W.2d 898, 901 (2013) (citing *Dumas v. Auto Club Ins. Ass'n,* 473 N.W.2d 652, 663 (1991)). Defendant received a financial benefit when plaintiff purchased the product. Plaintiff alleges inequity because

defendant retains this benefit while plaintiff cannot realize the represented benefits of the Product. As stated above, plaintiff does not need to specify that he ingested the product. Financial injury is sufficient. Taken in the light most favorable to plaintiff, he has sufficiently stated a claim upon which relief can be granted.

### E. Plaintiff Has Standing to Seek Injunctive Relief

"[A] plaintiff must demonstrate standing separately for each form of relief sought." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167 (2000). Standing has three elements:

> First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of— the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (internal citations omitted). "When seeking declaratory and injunctive relief, a plaintiff must show actual present harm or a significant possibility of future harm in order to demonstrate the need for pre-enforcement review." *Nat'l Rifle Ass'n of Am. v. Magaw*, 132 F.3d 272, 279 (6th Cir. 1997)

Defendant argues that, in false advertising cases, there is no chance of future harm because plaintiff will not purchase the Product at issue again. Defendant relies on *Johnson v. Jos. A. Bank Clothiers, Inc.*, No. 2:13-CV-756, 2015 WL 12698066 (S.D. Ohio June 9, 2015). In *Johnson*, the plaintiffs alleged that defendant falsely advertised regular prices such that the price they paid was vastly inflated above the true regular market price regularly paid by consumers at defendants' stores. *Id.* at *1. The Amended Complaint specifically stated that the plaintiffs "considered the [allegedly inflated] 'regular price' of the suits in making their purchasing decision and would not have engaged in the transaction but for the misrepresented 'regular price.'" *Id.* at *4. The court ruled that, "[i]n light of this litigation and plaintiffs' specific allegations, it simply cannot be said that these plaintiffs will in the future once again rely on the alleged misrepresentation in defendant's advertisements in their purchase of defendant's suits." *Id.* "Plaintiffs do not allege – or even argue – that they are likely to purchase defendant's suits again or that they are likely to suffer future harm as a result of defendant's advertising practices." *Id.* The court stated that "future injunctive relief sought by plaintiffs will not redress any injury allegedly suffered by plaintiffs in the past or that is likely to be suffered by plaintiffs in the future." *Id.* Accordingly, the Court concluded

"that plaintiffs lack Article III standing to seek injunctive relief in this Court."

*Id.*

Similarly, in *Neuman v. L'Oreal USA S/D, Inc.*, No. 1:14-CV-01615, 2014 WL 5149288 (N.D. Ohio Oct. 14, 2014), the court ruled that a plaintiff does not have standing to seek an injunction against allegedly deceptive advertising when they do not plan to purchase the product in question again. *Id.* at *2. The court examined a variety of cases, noting that

> some courts - especially but not exclusively district courts in California - have concluded that consumers who purchase a product in reliance on false advertising have standing to seek to enjoin the false advertising even if they do not plan to purchase the product again. These courts generally reason that if such plaintiffs lacked standing, then state consumer protection law could frequently not be enforced with injunctions in federal court.

*Id.* The court ultimately rejected this approach. It reasoned that "[t]he result that a plaintiff who suffers no risk of future injury cannot obtain an injunction furthers the purpose of the Article III standing inquiry - to ensure that there is a live case or controversy between the parties." *Id. See also Rikos v. Procter & Gamble Co.*, No. 1:11-CV-226, 2013 WL 360330, at *3-4 (S.D. Ohio Jan. 30, 2013).

In contrast, plaintiff urges the court to find that he has standing despite abandoning the Product upon discovery that it had been

deceptively labeled and advertised. Plaintiff relies on *Leiner v. Johnson &*
*Johnson Consumer Companies, Inc.*, 215 F. Supp. 3d 670, 672 (N.D. Ill.
2016). In *Leiner*, the court noted that:

> courts have split on whether a plaintiff who, having
> unveiled the defendant's deception, is unlikely to
> purchase (or affirmatively disavows the intent to
> purchase) the defendant's product in the future
> nevertheless maintains standing to pursue
> injunctive relief under state consumer protection
> statutes. The better view, however, and the one
> consistent with *Arreola* [*v. Godinez*, 546 F.3d 788
> (7th Cir. 2008)], is the one taken by courts that have
> declined to hold that plaintiffs lacked standing based
> on the fact that they abandoned the product upon
> their discovery that it had been deceptively labeled
> or advertised. These courts acknowledged the
> public policy conundrum inherent in the contrary
> view: the injunctive provisions of consumer
> protection statues . . . could never be invoked to
> enjoin deceptive practices if the complaining
> consumer's standing dissipated the moment she
> discovered the alleged deception and could no
> longer be fooled.

*Id.* at *672-73.

The Court is not bound by any of these cases. But, after evaluating
each approach, the public policy concerns, and interests of additional
consumers, both within and outside the proposed class, who are presently
unaware of the alleged misrepresentation, the Court agrees with the
reasoning in *Leiner* and concludes that plaintiff has Article III standing to
seek injunctive relief.

**F. Plaintiff's Claims are not Preempted by the FDCA**

Defendant argues that plaintiff's claims are preempted by the Federal Food, Drug and Cosmetic Act (FDCA). A common law cause of action for false or misleading product labeling is preempted by the FDCA "if it seeks to impose labeling or other requirements that are not identical to the requirements imposed by [21 U.S.C.] § 343(q), § 343(r), and the implementing regulations for those provisions." *Gubala v. CVS Pharmacy, Inc.*, No. 14 C 9039, 2016 WL 1019794, at *4 (N.D. Ill. Mar. 15, 2016).

> 'Not identical to'...means that the State requirement directly or indirectly imposes obligations or contains provisions concerning the composition or labeling of food, or concerning a food container, that: (i) Are not imposed by or contained in the applicable provision (including any implementing regulation) of section 401 or 403 of the act; or (ii) Differ from those specifically imposed by or contained in the applicable provision (including any implementing regulation) of section 401 or 403 of the act.

21 C.F.R. § 100.1(c)(4). "Claims under state law that parallel the FDCA's requirements, however, are not preempted." *Gubala*, 2016 WL 1019794, at *4 (citing *Turek v. Gen. Mills, Inc.*, 662 F.3d 423, 426 (7th Cir. 2011)). "The state thus can impose the *identical* requirement or requirements, and by doing so be enabled, because of the narrow scope of the preemption provision in the Nutrition Labeling and Education Act, to enforce a violation of the Act as a violation of state law." *Turek*, 662 F.3d at 426. Plaintiff's

claims must, therefore, violate the FDCA to escape express preemption and "be premised on 'the type of conduct that would traditionally give rise to liability under state law — and that would give rise to liability under state law even if the FDCA had never been enacted.'" *Gubala*, 2016 WL 1019794, at *4 (quoting *Riley v. Cordis Corp.*, 625 F. Supp. 2d 769, 777 (D. Minn. 2009)).

The Amended Complaint alleges that "[d]efendant's deceptive statements violate 21 U.S.C. § 343(a)(1), which deems food misbranded when the label contains a statement that is 'false or misleading in any particular.'" (Doc. 9 at PageID 183). Plaintiff's claims under state law, alleging "false and misleading" labels and advertising, parallel the FDCA's requirements. Further, the claims are premised on conduct that would give rise to liability under Michigan common law even if the FDCA had never been enacted. Therefore, plaintiff's claims are not preempted by the FDCA.

## G. Plaintiff's Claims are not Barred by the Doctrine of Primary Jurisdiction

Finally, defendant argues that the doctrine of primary jurisdiction bars plaintiff's claims. The doctrine "is concerned with promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties." *Nader v. Allegheny Airlines, Inc.*, 426 U.S. 290, 303 (1976). "The doctrine is properly invoked when enforcement of a

claim in court would require resolution of issues that have already been

placed within the special competence of an administrative body." *Kiefer v.*

*Paging Network, Inc.*, 50 F. Supp. 2d 681, 683 (E.D. Mich. 1999). The

doctrine is to be applied

> in cases raising issues of fact not within the
> conventional experience of judges or cases
> requiring the exercise of administrative discretion,
> agencies created by Congress for regulating the
> subject matter should not be passed over ....
> Uniformity and consistency in the regulation of
> business entrusted to a particular agency are
> secured, and the limited functions of review by the
> judiciary are more rationally exercised, by
> preliminary resort for ascertaining and interpreting
> the circumstances underlying legal issues to
> agencies that are better equipped than courts by
> specialization, by insight gained through
> experience, and by more flexible procedure.

*Far East Conference v. United States,* 342 U.S. 570, 574–75 (1952).

The doctrine of primary jurisdiction is not applicable here. Plaintiff's

claims are premised on allegations that defendant is making false and

misleading representations about its Product. "Determining whether

labeling and advertising are false or deceptive under consumer protection

laws is not an issue outside 'the conventional experience of judges." *United*

*States v. W. Pac. R.R. Co.*, 352 U.S. 59, 64 (1956). Thus, analyzing

plaintiff's claims does not infringe on the proper relationship between the

courts and the FDA. *See also Bruaner v. MusclePharm Corp.*, No. CV148869FMOAGRX, 2015 WL 4747941, at *4-5 (C.D. Cal. Aug. 11, 2015) (ruling that "application of the primary jurisdiction doctrine is not warranted" where plaintiff alleged that defendant MusclePharm misrepresented the contents of its product); *Jasper v. MusclePharm Corp.*, No. 14-CV-02881-CMA-MJW, 2015 WL 2375945, at *4 (D. Colo. May 15, 2015) (same).

## IV. Conclusion

For the reasons stated above, defendants' request for judicial notice, (Doc. 13), is GRANTED and defendant's motion to dismiss, (Doc. 12), is GRANTED IN PART AND DENIED IN PART.

IT HEREBY ORDERED that Counts III be DISMISSED.

IT IS SO ORDERED.

Dated:  November 16, 2017

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
November 16, 2017, by electronic and/or ordinary mail.

s/Marcia Beauchemin
Deputy Clerk

---